Taras Kick, CA Bar No. 143379
Taras@kicklawfirm.com
Tyler J. Dosaj, CA Bar No. 306938
Tyler@kicklawfirm.com
**THE KICK LAW FIRM, APC**
815 Moraga Drive
Los Angeles, California 90049
Tel: (310) 395-2988
Fax: (310) 395-2088

Attorneys for Plaintiff Michael E Kasaba LLC,
and the Putative Class

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

MICHAEL E KASABA LLC, individually, and on behalf of all others similarly situated,

Plaintiff,

v.

NATIONSTAR MORTGAGE LLC d/b/a MR. COOPER and DOES 1-100,

Defendants.

**CASE NO.: 26-2455**

**CLASS ACTION**

**COMPLAINT FOR**

(1) Breach Of Contract, Including the Implied Covenant Of Good Faith And Fair Dealing;
(2) Unjust Enrichment; and
(3) Violation of Unfair Competition Law, Cal. Bus. & Prof. Code §17200, *et seq*.

**DEMAND FOR JURY TRIAL**

Plaintiff Michael E Kasaba LLC ("Plaintiff"), by and through its attorneys, hereby brings this class and representative action against Nationstar Mortgage LLC d/b/a Mr. Cooper and DOES 1 through 100 (collectively "Defendants").

## NATURE OF THE ACTION

1. All allegations herein are based upon information and belief except those allegations which pertain to Plaintiff or its counsel. Allegations pertaining to Plaintiff or its counsel are based upon, *inter alia*, Plaintiff's or counsel's personal knowledge, as well as Plaintiff's or counsel's own investigation. Furthermore, each allegation alleged herein either has evidentiary support or is likely to have evidentiary support, after a reasonable opportunity for additional investigation or discovery.

2. This is a class and representative action brought by Plaintiff to assert claims in its own right, and in its capacity as the class representative of all other persons similarly situated, and in its capacity as a private attorney general on behalf of the members of the general public.

3. This class action seeks monetary damages, restitution, and injunctive relief due to Defendants' policy of charging mortgage loan borrowers prepayment penalties that they had no right to charge.

## PARTIES

4. Plaintiff Michael E Kasaba LLC is an LLC formed in California, with a principal address of 7242 Reseda Blvd, Reseda, CA 91335.

5. Defendant Nationstar Mortgage LLC d/b/a Mr. Cooper ("Mr. Cooper") is an LLC formed in Delaware with a principal address of 8950 Cypress Waters Blvd., Coppell, TX 75019. Nationstar is one of the largest mortgage servicer providers in the United States. On information and belief, Nationstar provided mortgage services to Plaintiff including through its wholly owned entities Rushmore Servicing and Rushmore Loan Management Services LLC.

6. Without limitation, defendants DOES 1 through 100, include agents, partners, joint ventures, subsidiaries and/or affiliates of Defendants and, upon

information and belief, also own and/or operate Defendants branch locations. As used herein, where appropriate, the term "Defendants" is also inclusive of Defendants DOES 1 through 100.

7. Plaintiff is unaware of the true names of defendants DOES 1 through 100. Defendants DOES 1 through 100 are thus sued by fictitious names, and the pleadings will be amended as necessary to obtain relief against defendants DOES 1 through 100 when the true names are ascertained, or as permitted by law or by the Court.

8. Rushmore Loan Management Services LLC, rebranded by Mr. Cooper as Rushmore Services ("Rushmore"), at all material times herein, were the agent, servant, and co-conspirator of Mr. Cooper, and/or acted within the purpose, scope, and course of said agency, service, conspiracy and/or employment and with the express and/or implied knowledge, permission, instruction and/or consent of Mr. Cooper.

9. Further, there exists, and at all times herein mentioned existed, a unity of interest and ownership by Mr. Cooper of Rushmore, and an inequitable result would arise if Rushmore were not treated as an alter-ego of Mr. Cooper for purposes of Mr. Cooper's liability in this matter. Mr. Cooper controls Rushmore and uses it as a mere conduit or instrumentality for Mr. Cooper's decisions and policies. Mr. Cooper effectively operates as a single enterprise in its operation of Rushmore.

10. There exists, and at all times herein mentioned existed, a unity of interest and ownership by Mr. Cooper with the DOE defendants, such that any corporate individuality and separateness between the defendants has ceased, and that Mr. Cooper and DOES are *alter egos* in that they effectively operate as a single enterprise, or are mere instrumentalities of one another.

11. At all material times herein, each defendant was the agent, servant, co-conspirator and/or employer of each of the remaining defendants, acted within the purpose, scope, and course of said agency, service, conspiracy and/or employment and with the express and/or implied knowledge, permission, and consent of the remaining defendants, and ratified and approved the acts of the other defendants. However, each

of these allegations are deemed alternative theories whenever not doing so would result in a contradiction with the other allegations.

12. Whenever reference is made in this Complaint to any act, deed, or conduct of Defendants, the allegation means that Defendants engaged in the act, deed, or conduct by or through one or more of their officers, directors, agents, employees, or representatives who was actively engaged in the management, direction, control, or transaction of Defendants' ordinary business and affairs.

13. As to the conduct alleged herein, each act was authorized, ratified or directed by Defendants' officers, directors, or managing agents.

## VENUE AND JURISDICTION

14. This Court has subject matter jurisdiction of this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d)(2) and (6) because: (i) there are 100 or more class members; (ii) there is an aggregate amount in controversy exceeding $5,000,000.00 exclusive of interest and costs; and (iii) there is minimal diversity because Plaintiff and Defendants are citizens of different states. On information and belief, Mr. Cooper maintains a portfolio with $1.5 trillion in unpaid principal balance, and has over 6 million customers nationwide. Plaintiff's damages exclusive of interest amount to at least $3,949.66 as further discussed herein.

15. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

16. Venue is proper in this District, among other reasons, pursuant to 28 U.S.C. § 1391(b)(2).

## FACTUAL ALLEGATIONS

17. On April 4, 2024, Plaintiff entered into a mortgage agreement with Investor Mortgage Finance LLC (the "Fixed Rate Note") and other agreements with Servis One relating to a residential property located at 810 Joyce Drive, Port Hueneme, CA 93041 ("810 Joyce Drive"). The Fixed Rate Note was executed in Los Angeles, California.

18. The principal on the mortgage pursuant to the Fixed Rate Note was $399,000.00, and Plaintiff was to pay $2,661.26 per month beginning on June 1, 2024. The Fixed Rate Note included a section describing various penalties if the borrower is to pre-pay the mortgage:

> BORROWER'S RIGHT TO PREPAY I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note. In the event of a Prepayment, in whole or in part, a prepayment penalty rate shall be assessed as follows:
>
> 1) If the Prepayment occurs on or before the first anniversary date of the loan, the prepayment penalty will equal five percent (5%) of the Principal amount prepaid.
> 2) If the Prepayment occurs after the first anniversary date, but on or before the second anniversary date, the prepayment penalty will equal four percent (4%) of the Principal amount prepaid.
> 3) If the Prepayment occurs after the second anniversary date, but on or before the third anniversary date, the prepayment penalty will equal three percent (3%) of the Principal amount prepaid.
> 4) If the Prepayment occurs after the third anniversary date, but on or before the fourth anniversary date, the prepayment penalty will equal two percent (2%) of the Principal amount prepaid.
> 5) If the Prepayment occurs after the fourth anniversary date, but on or before the fifth anniversary date, the prepayment penalty will equal one percent (1%) of the Principal amount prepaid.
>
> A prepayment penalty shall not apply if the Prepayment occurs after the fifth anniversary date. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless 1he Nole Holdc, agrees in writing to those changes.

Fixed Rate Note ¶ 4 (Ex. 1 to Complaint).

19. Neither the Fixed Rate Note nor any of the accompanying loan documents define the term "anniversary date."

20. Plaintiff made an escrow deposit to Investor Mortgage Finance LLC in the amount of $2,193.93 on April 4, 2024.

21. The 810 Joyce Drive mortgage was subsequently transferred from Servis One and Investor Mortgage Finance LLC to Mr. Cooper.

22. On May 27, 2025, Plaintiff prepaid the entire balance of the loan. However, Mr. Cooper, operating at the time under the brand name Rushmore Servicing, in breach of its contract with Plaintiff, imposed a "Prepayment Penalty" of $19,748.32, which equals 5% of the principal balance of $394,966.38. However, the Fixed Rate Note contracted for a 4% prepayment penalty.

23. On June 5, 2025, Plaintiff contacted Mr. Cooper by phone and disputed the Prepayment Penalty, stating that it should have been 4% of the principal rather than 5%. Mr. Cooper refused to refund the difference between these two amounts.

24. Defendants improperly assessed a 5% prepayment penalty against Kasaba. Per the Fixed Rate Note, when Kasaba paid off the loan in full on May 27, 2025, Plaintiff should have incurred at most a prepayment penalty in the amount of 4% of the principal because the prepayment occurred "after the first anniversary date" of the loan, namely April 4, 2025. Fixed Rate Note ¶ 4. That is, the penalty should have amounted to $15,798.66, which is 4% of $394,966.38, not $19,748.32. As such, Plaintiff was overcharged by $3,949.66.

25. Plaintiff reasonably understood the term "anniversary date" to refer to the date on which the loan was issued. Plaintiff did not understand the term "anniversary date" to refer to the date on which the first installment payment was due under the Fixed Rate Note.

26. The term "anniversary date" in the context of a residential mortgage loan is reasonably understood to refer to the date on which the borrower obtains the loan, not the date on which the first payment is due, pursuant to industry custom. *See, e,.g.,*

*Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 874 (7th Cir. 2005) (referring to the "two-year anniversary" of a mortgage loan as September 9, 2001, when the loan was "obtained" on September 9, 1999).

## CLASS ACTION ALLEGATIONS

27. Plaintiff brings this action on behalf of itself and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure. This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23. As all requisite elements of Rule 23 of the Federal Rules of Civil Procedure are satisfied, the court should grant class certification pursuant to Fed. R. Civ. P. 23(b)(2) and/or (b)(3), appoint Plaintiff as the Class Representative and the undersigned counsel as Class Counsel. The Classes are defined as:

> All persons and business entities who were borrowers on residential mortgage loans originated by or serviced by Defendant and were assessed a prepayment penalty exceeding the penalty that would have been assessed if the anniversary of the loan had been calculated based on the date the loan funded.
>
> All persons and business entities who are citizens of California and were borrowers on residential mortgage loans originated by or serviced by Defendants and were assessed a prepayment penalty exceeding the penalty that would have been assessed if the anniversary of the loan had been calculated based on the date the loan funded (the "California Sub-Class").

28. Excluded from the Classes are Defendants, Defendants' subsidiaries and affiliates, their officers, directors and member of their immediate families and any entity in which Defendants have a controlling interest, the legal representatives, heirs, successors or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

29. Plaintiff reserves the right to modify or amend the definition of the proposed Class and/or to add a subclass(es), if necessary.

30. The questions here are ones of common or general interest such that there is a well-defined community of interest among the members of the Classes. These questions predominate over questions that may affect only individual class members because Defendants have acted on grounds generally applicable to the class. Such common legal or factual questions include, but are not limited to:

a. Whether Defendants breached the terms of their mortgage agreements with borrowers by assessing prepayment penalties using the date of the first installment payment on the loan as the anniversary date;
b. Whether the conduct enumerated above violates the covenant of good faith and fair dealing;
c. Whether the conduct enumerated above violates the UCL; and
d. The appropriate measure of damages.

31. The parties are numerous such that joinder is impracticable. Upon information and belief, and subject to class discovery, the Classes consist of thousands of members or more, the identity of whom are within the exclusive knowledge of and can be ascertained only by resort to Defendants' records. Defendants have the administrative capability through its computer systems and other records to identify all members of the Class, and such specific information is not otherwise available to Plaintiff.

32. It is impracticable to bring members of the Classes' individual claims before the Court. Class treatment permits a large number of similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender. The benefits of the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

33. Plaintiff's claims are typical of the claims of the other members of the Class in that they arise out of the same wrongful business practices by Defendants, as described herein.

34. Plaintiff is an adequate representative of the Class in that Plaintiff was assessed the excessive prepayment penalty as alleged herein. In addition:

a. Plaintiff is committed to the vigorous prosecution of this action on behalf of itself and all others similarly situated and has retained competent counsel experienced in the prosecution of class actions;

b. There is no conflict of interest between Plaintiff and the unnamed members of the Class;

c. Plaintiff anticipates no difficulty in the management of this litigation as a class action; and

d. Plaintiff's legal counsel has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

35. Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

36. Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate corresponding declaratory relief with respect to the Class as a whole.

37. All conditions precedent to bringing this action have been satisfied and/or waived.

## FIRST CLAIM FOR RELIEF

### Breach Of Contract, Including the Implied Covenant Of Good Faith And Fair Dealing

### (On Behalf of Plaintiff and the Classes)

38. Plaintiff repeats and incorporates all of the preceding allegations as if fully set forth herein.

39. Plaintiff, and all members of the proposed Class, contracted with Defendants for residential mortgage loans.

40. Defendant breached its contract and promises made to Plaintiff and all members of the proposed class when as described herein, Defendant assessed prepayment penalties using the date of the first installment payment on the loan as the loan's anniversary date, as opposed to the date the loan was obtained.

41. Further, there exists an implied covenant of good faith and fair dealing in all contracts that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit – not merely the letter – of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.

42. Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of bad faith are evasion of the spirit of the bargain, willful rendering of imperfect performance, abuse of a power to specify terms, interference with or failure to cooperate in the other party's performance, and abuse of unilateral contractual discretion.

43. The implied covenant of good faith and fair dealing applies to the performance and enforcement of contracts, limits the parties' conduct when their contract defers decision on a particular term, omits terms, or provides ambiguous terms.

44. Defendants have breached the covenant of good faith and fair dealing and abused their discretion in the contract as described herein. Specifically, Defendants abused their contractual discretion to define the contractual term "anniversary date"

in a manner contrary to the industry standard usage of this term. A reasonable borrower would understand this term to mean the date on which the loan is obtained, not the later date on which the first installment payment becomes due.

45. Plaintiff and all members of the proposed Class have performed all, or substantially all, of the obligations imposed on them under the contract.

46. Plaintiff and all members of the proposed Class have sustained damages as a result of Defendants' breach of contract and breach of the implied covenant of good faith and fair dealing and are entitled to monetary relief and injunctive relief to avoid further damage which they and the members of the Class are threatened or at risk of.

## SECOND CLAIM FOR RELIEF

### Unjust Enrichment

### (On Behalf of Plaintiff and the Classes)

47. The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

48. To the extent required, this cause of action is pled in the alternative.

49. As a result of the misconduct alleged above, Defendants unjustly received and retained money in the form of excessive prepayment penalties assessed against Plaintiff and the Classes. In so doing, Defendants acted with conscious disregard for the rights of Plaintiff and members of the Classes.

50. As a result of Defendants' wrongful conduct as alleged herein, Defendants have been unjustly enriched at the expense of, and to the detriment of, Plaintiff and members of the Classes.

51. Defendants' unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

52. Under the common law doctrine of unjust enrichment, it is inequitable for Defendants to be permitted to retain the benefits it received, and is still receiving, without justification, from the imposition of excessive prepayment penalties on

Plaintiff and members of the Classes in an unfair, unconscionable, and oppressive manner. Defendants' retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment.

53. The financial benefits derived by Defendants rightfully belong to Plaintiff and members of the Classes. Defendants should be compelled to disgorge in a common fund for the benefit of Plaintiff and members of the Classes all wrongful or inequitable proceeds received by them. A constructive trust should be imposed upon all wrongful or inequitable sums received by Defendants traceable to Plaintiff and the members of the Classes.

54. Plaintiff and the Classes lack an adequate remedy at law to recover the amounts sought in restitution by this claim to the extent their legal claims are deemed barred by any affirmative defense that would not apply to this unjust enrichment claim.

55. Plaintiff, on behalf of themselves and the Classes, seek restitution from Defendant of the excessive prepayment penalties alleged herein.

## THIRD CLAIM FOR RELIEF

**Violation of Unfair Competition Law, Cal. Bus. & Prof. Code §17200, *et seq*.**

**(On Behalf of Plaintiff and the California Sub-Class)**

56. The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

57. Defendants' conduct described herein violates California's Unfair Competition Law (the "UCL"), codified as Business and Professions Code section 17200, *et seq*. The UCL prohibits and provides civil remedies for unlawful, unfair, or deceptive competition. Its purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services. In service of that purpose, the Legislature framed the UCL's substantive provisions in broad, sweeping language. By defining unfair competition to include "any unlawful, unfair or fraudulent business act or practice," the UCL permits violations of other laws to be treated as unfair competition that is independently actionable, and sweeps within its

scope acts and practices not specifically proscribed by any other law.

58. As further alleged herein, Defendants' conduct violates the UCL's "unfair" prong insofar as Defendants charge excessive prepayment penalties in breach of their contracts with borrowers and abuses its contractual discretion to define key contractual provisions as permitting the assessment of these prepayment penalties.

59. Defendants' conduct was not motivated by any legitimate business or economic need or rationale. The harm and adverse impact of Defendants' conduct on members of the general public was neither outweighed nor justified by any legitimate reasons, justifications, or motives. The harm to Plaintiff and Class Members arising from Defendants' unfair practices relating to the imposition of the improper fees outweighs the utility, if any, of those practices.

60. Defendants' unfair business practices as alleged herein are immoral, unethical, oppressive, unscrupulous, unconscionable and/or substantially injurious to Plaintiff and Class Members, and the general public. Defendants' conduct was substantially injurious to consumers in that they have been forced to pay improper, abusive, and/or unconscionable prepayment penalties. Defendants' conduct in assessing excessive prepayment penalties in breach of its contracts with borrowers and abusing its contractual discretion to define key contractual provisions as permitting the assessment of these prepayment penalties violated the public policy against such penalties

61. Further, Defendants' conduct violates the UCL's "unlawful" prong insofar as Defendants breached the terms of Plaintiff's and class members' contracts as set forth herein.

62. Further, Defendants' conduct violates the UCL's "fraudulent" prong. Defendants falsely represented, or created the tendency or likelihood to believe the deception, that the prepayment penalty would be assessed based on the anniversary date of the loan, when in fact Defendants' practice was to assess the prepayment

penalty based on the later date of the first installment payment on the loan. Plaintiff relied on Defendants' false representation in the Fixed Rate Note and reasonably expected to incur, at most, a 4% prepayment penalty based on the date of the prepayment.

**PRAYER**

WHEREFORE, Plaintiff and the Classes pray for judgment as follows:

1. For an order certifying this action as a class action;
2. For compensatory damages on all applicable claims and in an amount to be proven at trial;
3. For an order requiring Defendant to disgorge, restore, and return all monies wrongfully obtained together with interest calculated at the maximum legal rate;
4. For an order enjoining the wrongful conduct alleged herein;
5. For costs;
6. For pre-judgment and post-judgment interest as provided by law;
7. For attorneys' fees under the common fund doctrine, and all other applicable law and sources; and,
8. For such other relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff and the Class Members demand a trial by jury on all issues so triable.

Dated: March 6, 2026

Respectfully submitted,

*/s/ Taras Kick*

Taras Kick, CA Bar No. 143379
Tyler J. Dosaj, CA Bar No. 306938
**THE KICK LAW FIRM, APC**
815 Moraga Drive
Los Angeles, California 90049
Telephone: (310) 395-2988

Facsimile: (310) 395-2088
Taras@kicklawfirm.com
Tyler@kicklawfirm.com